E-FILED
Thursday, 03 March, 2011 10:54:06 AM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS, PEORIA DIVISION

| | |
|---|---|
| Emma J. Bitner, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 10-CV-1255 |
| Securitas Security Services, USA, Inc., | ) ) ) ) |
| Defendant. | ) ) |

## REPORT AND RECOMMENDATION

BYRON G. CUDMORE, U.S. MAGISTRATE JUDGE:

Plaintiff sues her former employer under Title VII and state law for sexual discrimination in the workplace and retaliation for complaining about that sexual discrimination. Defendant moves to dismiss for failure to state a claim, for judgment on the pleadings, and/or for a more definite statement. For the reasons below, the Court recommends that the motion be denied.

## Legal Standard

To state a claim under federal notice pleading standards, the Complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Factual

allegations are accepted as true and must give "'fair notice of what the . . . claim is and the grounds upon which it rests.'" EEOC v. Concentra Health Serv., Inc., 496 F.3d 773, 776-77 (7th Cir. 2007), *quoting* Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964 (2007)(other citation omitted). However, the "' . . . allegations, [must] show that it is plausible, rather than merely speculative, that [the plaintiff] is entitled to relief.'" Tamayo v. Blagojevich, 526 F.3d 1074, 1083 (7th Cir. 2008)(quoted and other citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949-50 (2009), *citing* Twombly, 127 S.Ct. 1955. The same legal standard applies to a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c). Buchanan-Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009).

## Allegations

These allegations are set forth as true for purposes of this Recommendation only.

Plaintiff worked for Defendant as a "security officer/firefighter specialist." Beginning in November, 2007, she was stationed in Mapleton, Illinois, providing security to Caterpillar, Inc., through a contract between Defendant and Caterpillar. (Complaint ¶ 4).

Plaintiff started out working on the first shift, but the hostile work environment became so severe that she transferred to the third shift in November 2008. At first, the offensive conduct on the first shift was isolated, but then it accelerated in June 2008 after a female, Amanda Balster, took over as Site Supervisor. (Complaint ¶ 7). Plaintiff and Balster were the only females working the first shift.

For example, in June, 2008, one of Defendant's employees put a dead rat in the "George Foreman" grill in the breakroom. (Complaint ¶ 7(B)). Someone also put an "I like big boobs" screen saver on the computer terminal that Plaintiff used, and a picture of a penis on the desktop that Plaintiff used. (Complaint ¶ 7(B)(1)). Doug Barnett, another security officer at the time, denied doing these things. Plaintiff told Barnett that she "stayed at the back gate to escape you guys' vulgarity." (Complaint ¶ 7(B)(2)). On or about June 22, 2008, Plaintiff complained about Barnett to Amanda Balster, the Site Supervisor. At some point

Barnett became angry about something Plaintiff had told the second shift,[1] broke his car window with his fist, and sped out of the employee parking lot. (Complaint ¶ &(B)(3). Barnett was then terminated.

Throughout Plaintiff's work on the first shift, another security officer, Darren Arnett, "kept photographs of himself with a box over his genital area on his locker." (Complaint ¶ 7(C)(1)). Arnett and the other males would also pass gas loudly in the breakroom, on the table if someone was seated. (Complaint ¶ 7(C)(2)). The males employees regularly "[shook] their open fist simulating masturbation over their pelvic area," and Arnett regularly "shook his face with his tongue simulating giving oral sex with a female." (Complaint ¶ 7(C)(3)-(4)). The male employees also regularly "download[ed] photographs of themselves making obscene gestures to digital cameras, [and] show[ed] the photos to others." (Complaint ¶ 7(C)(6)).

Plaintiff objected to the above conduct, told the male employees to stop, and tried to avoid the male employees. Balster, the Site Supervisor, also allegedly instructed the male employees to stop, but they refused.

---

[1] It is not clear what Plaintiff told the second shift that angered Barnett. Perhaps it was the "back gate" comment, or perhaps Plaintiff accused Barnett of the screen saver and picture incidents.

(Complaint ¶ 10). Arnett regularly told Plaintiff to "chill out, and that she was a bitch who could bitch a telephone book in half." (Complaint ¶ 7(C)(5)). These acts increased after Plaintiff complained to Supervisor Balster. Plaintiff also allegedly suffered retaliation for her complaints, which, it is not clear, may have included unfounded disciplinary warnings from Supervisor Balster in September 2008. (Complaint ¶ 9).

Because the alleged sexual harassment persisted despite Plaintiff's objections, she decided to transfer to the third "graveyard" shift in November 2008, in order to escape the harassment. (Complaint ¶¶ 11-12).

A few months later, in February, 2009, Darren Arnett was promoted to Site Supervisor, after Balster, the former Supervisor, transferred to a different position. This meant that Arnett supervised all shifts, including Plaintiff's third shift. (Plaintiff's Response, d/e 8, p. 15). On February 3, 2009, Plaintiff told Defendant's human resources representative and the head of security about her fears of retaliation from Arnett. (Complaint ¶ 14). She gave them photographs of the harassment that she had endured on the first shift.

On February 17, 2009, Plaintiff was "at the back gate and pulled up a picture of a layout on a Caterpillar computer which stated this is an ass raping area, faggots only, no females allowed." (Complaint ¶ 15). Plaintiff phoned the head of security, who complained about the early hour and responded that there was no way to catch the culprits. The head of security also told Plaintiff that she would not be informed of the results of an investigation (presumably an investigation into her complaints of harassment and fears of retaliation). (Complaint ¶ 16).

On February 27, 2009, Supervisor Arnett suspended Plaintiff for one day for the pretextual reason that she had not checked the oil in a gasoline-powered cart, but she had no duty to do so. On March 3, 2009, Arnett suspended Plaintiff for five days for the pretextual reason that she was reading at the back gate, but she was off duty at the time. (Complaint ¶¶ 17-18). The next day, Arnett told Plaintiff to report to work on March 5, 2009. She was informed on March 5, 2009, that "she was terminated from employment as they had no place to put her." (Complaint ¶ 19). However, Defendant continued to hire new employees.

## Analysis

### I. Timeliness of Administrative Charges relating to Federal and State Hostile Work Environment Claims

Defendant moves for judgment on the pleadings, arguing that Plaintiff failed to timely exhaust her sexual harassment/hostile work environment claims. A motion for judgment on the pleadings, though, is made after the pleadings are closed. Fed. R. Civ. P. 12(c). Defendant has not yet filed an Answer, so the pleadings are not closed, making a Rule 12(c) motion premature. Seber v. Unger, 881 F.Supp. 323, 325 n. 2 (N.D. Ill. 1995). Accordingly, the Court construes the argument as one to dismiss under Rule 12(b)(6). The difference is immaterial, since the same legal standard applies.

"Failure to timely file an administrative charge is an affirmative defense," Laouini v. CLM Freight Lines, Inc., 586 F.3d 473, 475 (7th Cir. 2009), which means that it is Defendant's burden to plead and prove. A Rule 12(b)(6) dismissal may be warranted, though, if the affirmative defense is "plain from the complaint." Jay E. Hayden Foundation v. First Neighbor Bank, 610 F.3d 382, 383 (7th Cir. 2010).

In order to pursue her claims in court, Plaintiff must first exhaust her administrative remedies by filing charges with the EEOC (for her Title VII

claim) and the IDHR (for her state law claim). The statutory due date for filing an IDHR charge is "[w]ithin 180 days after the date that a civil rights violation allegedly has been committed." 775 ILCS § 5/7A-102(A)(1). The due date for filing the EEOC charge is 300 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1); Sharp v. United Airlines, Inc., 236 F.3d 368, 372 (7th Cir. 2001)("a plaintiff in a deferral state such as Illinois must file a charge of discrimination with the EEOC or equivalent state agency within 300 days after the 'alleged unlawful employment practice.'").

Plaintiff filed a complaint simultaneously with the IDHR and the EEOC on August 24, 2009. Defendant does not dispute Plaintiff's contention that this was within 180 days of her suspensions and termination. (Attachment to Complaint, d/e 1-3; d/e 8, p. 17).

Defendant argues that, as to the state law sexual harassment claim, Plaintiff cannot reach back to alleged conduct that occurred more than 180 days before filing. Specifically, Defendant contends that "any discrete unlawful acts that occurred before February 25, 2009, are untimely" as to the state law sexual harassment claim. (d/e 6, p. 8). In Defendant's view, this means that the state law sexual harassment claim must be dismissed

entirely, because the harassment stopped in November 2008, when Plaintiff transferred to the third shift. (d/e 6, p. 8). Defendant concludes that "Plaintiff's sexual harassment claim under the IHRA is clearly time-barred." (d/e 6, p. 8).

Similarly, for the Title VII hostile work environment claim, Defendant argues that Plaintiff cannot reach back more than 300 days. Specifically, "unrelated incidents of sexual harassment that occurred prior to October 28, 2008, particularly involving Doug Barnett who left on June 22, 2008, are time-barred" because they occurred more than 300 days before the EEOC charge was filed. (d/e 6, p. 8). Defendant contends that, since Doug Barnett was terminated in June 2008, any alleged misconduct by him is outside the 300 days and cannot be part of the Title VII hostile work environment claim.

Plaintiff counters that her transfer to the third shift afforded only temporary respite from the hostile work environment. Plaintiff contends that once Arnett took over as Site Supervisor, the hostile work environment became unavoidable, as evidenced by the offensive computer screen in February, 2009, announcing "no females allowed," Arnett's discipline of her for contrived reasons shortly after he was promoted to Supervisor, and her

ultimate termination. (d/e 8, p. 14). She argues that all the alleged misconduct, reaching back to June 2008, was "part of the whole," even though she had "three months peace from sexual harassment" after she moved to the third shift. (d/e 8, p. 16, *citing* National R.R. Passenger Corp. v. Morgan , 536 U.S. 101, 119 (2002).

The Court agrees with Plaintiff. The Illinois Supreme Court recognizes that "[a] sexual harassment claim based on a hostile work environment generally is made up of a series of events rather than a single event. Such a charge is timely as long as it is filed within 180 days of any act that is part of the hostile work environment." Sangamon County Sheriff's Dep't v. Illinois Human Rights Commission, 233 Ill.2d 125, 141-42 (2009)(citations omitted). This parallels the U.S. Supreme Court's holding in National R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002), that a hostile work environment claim encompasses the entire time the hostile environment existed, so long as "an act contributing to the claim occurs within the filing period." 536 U.S. at 117.

Plaintiff's hostile environment did not cease to exist when Barnett was terminated in June 2008. According to the allegations, the environment became even more hostile after Barnett's termination. Nor did

the hostile environment disappear when Plaintiff moved to the third shift. It persisted, compelling Plaintiff to continue to work the graveyard shift to avoid it. After "three months peace" on the graveyard shift, she was again allegedly subjected directly to the hostile environment when Arnett became Site Supervisor. As Plaintiff points out, the Supreme Court in <u>Morgan</u> addressed an analogous scenario:

> The following scenarios illustrate our point: (1) Acts on days 1-400 create a hostile work environment. The employee files the charge on day 401. Can the employee recover for that part of the hostile work environment that occurred in the first 100 days? (2) Acts contribute to a hostile environment on days 1-100 and on day 401, but there are no acts between days 101-400. Can the act occurring on day 401 pull the other acts in for the purposes of liability? In truth, all other things being equal, there is little difference between the two scenarios as a hostile environment constitutes one "unlawful employment practice" and it does not matter whether nothing occurred within the intervening 301 days so long as each act is part of the whole. Nor, if sufficient activity occurred by day 100 to make out a claim, does it matter that the employee knows on that day that an actionable claim happened; on day 401 all incidents are still part of the same claim. On the other hand, if an act on day 401 had no relation to the acts between days 1-100, or for some other reason, such as certain intervening action by the employer, was no longer part of the same hostile environment claim, then the employee cannot recover for the previous acts, at least not by reference to the day 401 act.

536 U.S. at 118. Here, a plausible inference arises that the hostile work environment persisted throughout Plaintiff's job. That she felt compelled

switch shifts to avoid the hostile environment does not negate its continued presence. The February, 2009, acts were arguably part of the same hostile work environment that Plaintiff endured on the first shift. In sum, the Court concludes that it is not clear from the face of the Complaint that any of the alleged conduct is outside of the statute of limitations. A more developed record may show otherwise.

## II. Sufficiency of Allegations for Title VII Hostile Work Environment Claim

Defendant alternatively contends that Plaintiff fails to state a claim under Title VII for a hostile work environment.

Defendant's argument belongs at summary judgment, in the Court's opinion. It is true that to succeed Plaintiff

> must be able to show that she was subjected to unwelcome conduct because of her sex; that the conduct was so severe or pervasive that it created a hostile or abusive working environment; and that there was a basis for . . . liability. . . .The unwelcome conduct can be sexist-demonstrating animus toward women-or sexual. . . . It must be both subjectively and objectively severe or pervasive.

Berry v. Chicago Transit Authority, 618 F.3d 688, 691 (7th Cir. 2010) (citations omitted); Turner v. The Saloon, Ltd., 595 F.3d 679, 684 (7th Cir. 2010). The Court does agree that some of the allegations appear to involve vulgar or boorish behavior rather than sexually harassing

behavior, or appear to relate more to the retaliation claim than to sex discrimination. See Berry v. Delta Airlines, Inc., 260 F.3d 803, 808 (7th Cir. 2001)(Title VII "is not a 'general civility code' designed to purge the workplace of all boorish or even all harassing conduct.")(quoted cite omitted)(finding behavior motivated by retaliatory animus, not "anti-female animus"); Baskerville v. Culligan International Co., 50 F.3d 428, 430-31 (7th Cir. 1995).

However, Plaintiff alleges that she was repeatedly subjected to conduct such as obscene sexual gestures and pictures, that Arnett called her a bitch, and that a computer screen upon which she worked announced "no females allowed." A determination of the severity and pervasiveness of this type of conduct should await a fully developed record, just like the cases cited by Defendant, which were all decided at the summary judgment stage or after a trial, not at the notice pleading stage. See, e.g., Benders v. Bellows and Bellows, 515 F.3d 757 (2008) (summary judgment); Whitaker v. Northern Illinois University, 424 F.3d 640 (7th Cir. 2005)(summary judgment); Gleason v. Mesirow Financial, Inc., 118 F.3d 1134 (7th Cir. 1997)(summary judgment); Brill v. Lante Corp., 119 F.3d 1266 (7th Cir. 1997)(summary judgment); Baskerville v. Culligan

International Co., 50 F.3d 428 (7th Cir. 1995)(reversing jury award); Cowan v. Prudential Ins. Co. of America, 141 F.3d 751 (7th Cir. 1998)(summary judgment); *see also* EEOC v. Universal Brixius, LLC, 264 F.R.D. 514, 516-17 (E.D. Wis. 2009)(EEOC complaint satisfied notice pleading standard even though it "lack[ed] certain factual allegations that must be proved to sustain a hostile work environment.").

Nor does the Court believe that a more definite statement is necessary. Plaintiff's allegations give sufficient notice of her claim and provide concrete examples in support of that claim. Nothing more is required at this stage. Defendant should be able to file an Answer to the Complaint. *See* Fed. R. Civ. P. 12(e)(party may move for more definite statement where pleading "so vague or ambiguous that the party cannot reasonably prepare a response.").

### III. Sufficiency of Allegations for Federal and State Sex Discrimination Claims based on Adverse Employment Actions

Defendant next argues that Plaintiff fails to allege that similarly situated employees were treated more favorably than she, citing Gates v. Caterpillar, Inc., 513 F.3d 680, 689 (7th Cir. 2008)(summary judgment). That requirement is part of proving discrimination using the indirect method of proof. There is also the direct method of proof, which involves direct or

circumstantial evidence of discriminatory motive. *See* Rudin v. Lincoln Land Community College, 420 F.3d 712, 719-20 (7th Cir. 2005)(summary judgment). In any event, this case is not at the summary judgment stage, so what method of proof (direct or indirect) Plaintiff will use to try to survive summary judgment is not an issue. Plaintiff does not need to satisfy her evidentiary burdens at the notice pleading stage. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510-511 (2002)(prima facie evidentiary standard established by McDonnell Douglas is not a notice pleading requirement); Bell Atlantic, 550 U.S. at 569-70 (stressing that its decision did not contradict Swierkiewicz); Swanson v. Citibank, N.A., 614 F.3d 400, 404 (7th Cir. 2010)(recognizing Supreme Court's "explicit decision to reaffirm the validity of Swierkiewicz" in Bell Atlantic).

    The Seventh Circuit in Tamayo v. Blagojevich, 526 F.3d 1074 (7th Cir. 2008) stated that, even after the Supreme Court's Bell Atlantic decision, "a complaint alleging sex discrimination need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of her sex." 526 F.3d at 1084 (citing Concentra, 496 F.3d 773 (7th Cir. 2007)); Joren v. Napolitano, — F.3d —, 2011 WL 350475 *2 (7th Cir. 2011)("To survive a motion to dismiss on the basis of

gender discrimination, Joren needed to allege that the TSA instituted an adverse employment action against her on 'the basis of her sex.'"). Tamayo came down before the Supreme Court's decision in Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949-50 (2009), but Defendant does not contend that Iqbal had any effect on the Supreme Court's decision in Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510-511 (2002), which held that an employment discrimination complaint need not establish the evidentiary elements of a prima facie case.

Reasonable minds might debate the reach of Iqbal, but the debate is theoretical here. Plaintiff says more than simply that she was suspended and fired because of her gender. She alleges specific instances that allow a plausible inference of discriminatory motive, such as the "no females allowed" screen and the continued sexual antics of the male employees after Plaintiff's objections. The Court believes that these allegations state a plausible claim that Plaintiff's sex was a motivating factor in the adverse employment events she suffered. It may be that the evidence ultimately supports only a retaliation claim, but that is a decision that deserves a fully developed factual record, just like the cases cited by Defendant.

Defendant asserts alternatively that a more definite statement is needed to enable it to prepare a response. (d/e 6, p. 16). For the reasons above, the Court believes that the allegations give sufficient notice of this claim for Defendant to file an Answer.

**IV. Retaliation Claim**

Defendant argues that Plaintiff should make her retaliation claim more definite by separating her claims into different counts. Defendant says that "it is left guessing which allegations apply to which claims." Defendant cites no requirement in the federal rules or in case law that factual allegations be matched to specific counts. *See* Hatmaker v. Memorial Medical Center, 619 F.3d 741, 743 (7th Cir. 2010)(Bell Atlantic and Iqbal "do not undermine the principle that plaintiffs in federal courts are not required to plead legal theories"). Federal Rule of Civil Procedure 10(b) does require a separate count for "each claim founded on a separate transaction or occurrence" "[i]f doing so would promote clarity," but here the Plaintiff grounds her claims on the same transactions and occurrences. (*See* Complaint ¶ 24). The Complaint is clear enough as it stands. It gives sufficient notice to enable Defendant to file an Answer, which is all that is required at this stage.

WHEREFORE, the Court RECOMMENDS that Defendant's Motion to Dismiss, For Judgment on the Pleadings, and/or For More Definite Statement be denied (d/e 6).

Any objections to this Report and Recommendation must be filed in writing with the Clerk of the Court within fourteen days after service of a copy of this Report and Recommendation. See 28 U.S.C. § 636(b)(1). Failure to timely object will constitute a waiver of objections on appeal. Video Views, Inc. v. Studio 21, Ltd., 797 F.2d 538, 539 (7th Cir. 1986). See also Local Rule 72.2.

ENTER: March 3, 2011

_____s/ Byron G. Cudmore_____
BYRON G. CUDMORE
UNITED STATES MAGISTRATE JUDGE